SUMMARY ORDER
Appellants (collectively, the “WTC Insureds”) appeal from a June 10, 2008, 2008 WL 2358882, opinion and order of the district court granting summary judgment to appellee Allianz Global Risks U.S. Insurance Company (“Allianz”), and the subsequent June 23, 2008 judgments in two actions pertaining to insurance coverage disputes over property and other damage resulting from the September 11, 2001 attacks on the World Trade Center. This dispute is over whether, under excess insurance policies issued by Allianz to the WTC Insureds, the insured or the insurer has a priority claim to any recoveries that might be won from airlines and other third-party defendants in ongoing tort litigation over the September 11 attacks. We assume the parties’ familiarity with the underlying facts, procedural history, and specification of issues for review.
“We review a district court’s decision of whether to exercise jurisdiction over a declaratory judgment action deferentially, for abuse of discretion.” Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 388 (2d Cir.2005). We review the district court’s decision on the merits of the parties’ insurance dispute, a pure question of law, de novo. Id. at 388-89.
The WTC Insureds argue that this dispute is not ripe for judicial determination. “The standard for ripeness in a declaratory judgment action is that ‘there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.’ ” Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 388 (2d Cir.2005) (quoting Maryland Cas. Co. v. Pac. Coal & *632 Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). We examine “(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.” Id.
The WTC Insureds argue that this dispute is not yet ripe because, for example, it is possible that neither party will succeed in proving liability or damages in the tort litigation. As we have explained, however, “[tjhat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action.... Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.” Associated Indem. Corp. v. Fairchild Indus., Inc., 961 F.2d 32, 35 (2d Cir.1992) (citations and quotation marks omitted); Maryland Cas. Co., 312 U.S. at 273, 61 S.Ct. 510 (“the difference between an abstract question and a ‘controversy’ contemplated by the Declaratory Judgment Act is necessarily one of degree.”). The WTC Insureds do not call into doubt the “practical likelihood” of some type of settlements or judgments in the WTC Tort Litigation. See Certain Underwriters at Lloyd’s, London v. St. Joe Minerals Corp., 90 F.3d 671, 675 (2d Cir. 1996). As the district court determined, this case is a pure question of contract interpretation requiring no further factual development. The district court did not abuse its discretion in determining that a judgment in this action would “offer relief from uncertainty” and serve a “useful purpose in clarifying” the rights of the parties to the proceeds of the WTC Tort Litigation, avoiding additional litigation and assisting the parties in formulating settlement positions and developing settlement strategy. See Duane Reade, Inc., 411 F.3d at 388.
The WTC Insureds also argue that the district court erred in its interpretation of the insurance contract. In the
interpretation of insurance contracts ... words should be given the meanings ordinarily ascribed to them and absurd results should be avoided .... the meaning of particular language found in insurance policies should be examined ‘in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.’
World Trade Center Props., LLC v. Hartford Fire Ins. Co., 345 F.3d 154, 184 (2d Cir.2003) (quotation marks omitted).
Allianz’s excess insurance policies follow the Travelers Indemnity Company form, except as “otherwise provided.” The Travelers form includes a subrogation clause which provides that the insured’s right to seek recovery from a third party for the amounts paid under the policy are transferred to the insurer, and the insurer “will be entitled to priority of recovery” against those third parties.
The WTC Insureds argue that this sub-rogation clause does not apply because Allianz’s excess policies include provisions for calculation of the “ultimate net loss” and “application of recoveries.” The Al-lianz policies obligate Allianz to indemnify the WTC Insureds for their “ultimate net loss,” defined as:
the actual loss sustained by the Insured as a direct result of the action of perils insured against ... after making deductions for: deduetible(s) and/or other self-insured retention(s) to be borne by the Insured, all recoveries, salvages and other insurances (other than recoveries under the policies of the Underlying Insurers) whether recoverable or not.
*633 The “application of recoveries” clause provides:
All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured and the Insurers provided always that nothing in this Clause shall be construed to mean that losses under this policy are not recoverable until the Insured’s Ultimate Net Loss has been finally ascertained.
The WTC Insureds argue that the term “recoveries,” as used in these clauses, is a broad one encompassing recoveries received by insurers in subrogation, and that the operation of these provisions is to require that the insurers turn over the proceeds of any subrogation actions to the insured.
A plain reading of the insurance contract does not support the WTC Insureds’ interpretation. No term of the Allianz excess policy provides that a recovery by Allianz in subrogation must be given over to the insured. We agree with the district court that “the Application of Recoveries clause is dedicated to determining the calculation of ultimate net loss when payments are received after the loss settlement has occurred; it has no effect on the contractual subrogation or the contracted priority of subrogation.” Nothing in the Allianz excess policies provides that the “actual loss” is calculated by subtracting post-settlement recoveries, let alone that the WTC Insureds have a priority claim to those post-settlement recoveries. The words “all necessary adjustments shall then be made between the Insured and the Insurers,” will not bear the weight of the WTC Insureds argument that they must be “made whole” before Allianz can recover any money in subrogation.
Moreover, reading the term “recoveries” in the Allianz policy to include subrogation recoveries by an insurer would lead to an absurd result. The insured’s “ultimate net loss” — i.e., the amount that the insurer owes the insured — would be reduced by money paid to the insurer because, by definition, a subrogation recovery is money paid to the insurer. We decline to adopt this tortured interpretation.
Accordingly, the judgment of the district court hereby is AFFIRMED.